IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL PEARCE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FOREST HILLS BOROUGH, FOREST HILLS POLICE DEPARTMENT, FOREST HILLS MAYOR FRANK PORCO, POLICE CHIEF CHARLES WILLIAMS, BOROUGH OF CHALFONT, CHALFONT MAYOR JAMES PERRY, DAKOTA WAGNER,<br><br>　　　　Defendants. | 2:24-CV-01271-CCW |

## **OPINION**

Before the Court is a Motion to Dismiss filed by Defendants. ECF No. 22. For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss.

**I.　Factual Background**

This case arises from interactions between pro se Plaintiff Michael Pearce and Defendants Forest Hills Police Department, Police Chief Charles Williams, and Officer Dakota Wagner.[1] The relevant factual allegations, taken as true, are as follows.

On July 1, 2024, Mr. Pearce made two separate 911 calls. ECF No. 19 at 1. The first call was to report that a dumpster was blocking a designated handicap parking space, and the second was to report a Ford Escort that was parked on the sidewalk of Highland Avenue. *Id.* When no police officers responded, Mr. Pearce again called 911 to ask when they would respond. *Id.* The

---

[1] Mr. Pearce originally included as Defendants the Borough of Forest Hills, the Borough of Chalfant, Forest Hills Mayor Frank Porco, and Chalfont Mayor James Perry. ECF No. 19. The parties, however, have agreed to dismiss these defendants. ECF No. 30 at 2. Accordingly, the Court's analysis will be limited to the remaining defendants and claims.

911 dispatcher informed Mr. Pearce that officers from the Forest Hills Police Department had already handled the call. *Id.* A few minutes later, Mr. Pearce observed a Forest Hills patrol vehicle arrive. *Id.*

Mr. Pearce then went to the police station to speak with a supervisor about why dispatch told him that officers had already responded to his call when, in fact, they had not. *Id.* While at the station, Mr. Pearce spoke with Officer Wagner and a second officer. *Id.* The officers explained that they were busy on an arrest when Mr. Pearce called. *Id.* Mr. Pearce, however, responded that he called 911 after the officers had left the scene of arrest. *Id.* When the officers ended the conversation, Mr. Pearce stated, "Fuck this" and called Officer Wagner "a pig." *Id.* The following day, Mr. Pearce spoke with Chief Williams about the officers' response to his 911 calls, and informed Chief Williams that he would be "photographing the police in the performance of their duties, so as to gather evidence of failure to perform their duties." *Id.* at 1–2.

On July 5, 2024, when Mr. Pearce was leaving a Dunkin Donuts, he drove past a marked Forest Hills patrol vehicle that was parked by the exit. *Id.* at 2. On July 10, 2024, Forest Hills Police arrested Mr. Pearce for stalking, harassment, conspiracy to commit stalking, false reports to law enforcement, and disorderly conduct. *Id.* Officer Wagner's sworn arrest affidavit stated that Mr. Pearce's two 911 calls on July 1 were false reporting. *Id.* It further stated that the dumpster was next to—and not blocking—the handicap spot, and that the Ford Escort was not parked on Highland Avenue. *Id.* It also explained that Mr. Pearce was being charged with harassment because he called 911 while knowing that the officers were on priority calls, and that Mr. Pearce was charged with disorderly conduct for causing a scene and yelling "Fucking Pigs" and "Suck Our Dicks." *Id.* Mr. Pearce then alleges that during a preliminary hearing, Officer Wagner testified that the dumpster was, in fact, blocking the handicap spot and that the Ford

2

Escape was parked on Highland Avenue. *Id.* Both statements contradicted those in his arrest affidavit. *Id.* Mr. Pearce was subsequently found guilty of harassment and disorderly conduct in the Court of Common Pleas of Allegheny County. ECF No. 30, Ex. 2. Mr. Pearce's convictions, however, were overturned on appeal. *Id.*

On August 6, 2024, Mr. Pearce filed a complaint in the Court of Common Pleas of Allegheny County against Defendants. ECF No. 1, Ex. 2. On September 6, 2024, Defendants removed the action to federal court.[2] ECF No. 1. Mr. Pearce then filed an Amended Complaint against Defendants. ECF No. 19. On November 25, 2024, Defendants moved to dismiss Mr. Pearce's Amended Complaint for failure to state a claim.[3] ECF No. 22. In response, Mr. Pearce filed two documents which opposed the Motion to Dismiss and requested leave to amend his Amended Complaint to add in the type of relief he is seeking. ECF Nos. 30, 33. The Motion is now fully briefed and ripe for resolution. ECF Nos. 22, 23, 30–33.

## II.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the

---

[2] Defendants' removal was proper pursuant to 28 U.S.C. §§ 1331 and 1441(a) because Mr. Pearce's original complaint raised federal questions.

[3] In their Motion, Defendants also ask the Court to convert their Motion to Dismiss into a summary judgment motion pursuant to Fed. R. Civ. P. 12(d). Per Rule 12(d), if the Court converts the Motion into a summary judgment motion, it must give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Here, the Court declines to convert the Motion into a summary judgment motion.

elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss"). And when resolving a pro se plaintiff's motion, courts "liberally construe pro se filings with an eye toward their substance rather than their form." *See United States v. Delgado*, 363 F. App'x 853, 855 (3d Cir. 2010).

4

### III.   Legal Analysis

In his Amended Complaint, Mr. Pearce does not cite any statutory authority for his claims but contends that Officer Wagner's "FALSE SWEARING on an Arrest Affidavit and his PERJUROUS [sic] testimony violated the Plaintiff's 1st Amendment right to record the police and his 4th Amendment right to false imprisonment." ECF No. 19 at 2. He then reiterates that Officer Wagner committed "False SWEARING and Felonious PERJURY." *Id.* Mr. Pearce's basis for including other defendants is that "Forest Hills Police are the officer's employer" and "Police Chief Charles Williams is the Officer's immediate supervisor. *Id.* The Court liberally construes his Amended Complaint as bringing claims pursuant to 42 U.S.C. § 1983 for violation of Mr. Pearce's First Amendment right to record police activity and his Fourth Amendment right to be free from false arrest, false imprisonment, and malicious prosecution.[4] *See generally* ECF No. 19.

Section 1983 establishes a statutory cause of action to vindicate constitutional violations. 42 U.S.C. § 1983. To state a claim under § 1983, plaintiffs must plead that they were "deprived of a federal constitutional or statutory right by a state actor." *Coulter v. Coulter*, No. 23-2222, 2024 WL 163081, at *1 (3d Cir. Jan. 16, 2024); *see Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983). Thus, courts consider whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Further, courts must also address the state actor element, which requires an individual to "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey*, 635 F.3d at 609 (quoting *Abbott v.*

---

[4] The Court has jurisdiction over Mr. Pearce's constitutional claims, which raise federal questions, under 28 U.S.C. § 1331 and supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367.

*Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).  The Court will address each of Mr. Pearce's § 1983 claims below.

        **A.**       **Mr. Pearce Has Failed to Allege Chief Williams' Personal Involvement.**

As a threshold matter, Defendants seek to dismiss Chief Williams as a defendant, asserting that Mr. Pearce has failed to allege that Chief Williams was personally involved in the alleged constitutional violations.  ECF No. 23 at 10–11.  Mr. Pearce responds that he informed Chief Williams that he planned to record police, and because Chief Williams failed "to advise his subordinates of the Plaintiff's 1st Amendment protected activity [it] proves that he conspired with Defendant Wagner and is liable for the violation against the Plaintiff."  ECF No. 33 at 2.

"Section 1983 liability cannot be based solely upon the basis of *respondeat superior*." *Gagliardi v. Fisher*, 513 F. Supp. 2d 457, 473 (W.D. Pa. 2007) (Conti, J.) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Rather, an individual defendant in a § 1983 case "must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (internal quotations omitted). Additionally, a supervisor's conduct may be actionable where they "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quotation omitted).  *See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[A § 1983] complaint is adequate where it states the conduct, time, place, and persons responsible.").

Here, the Court agrees that Mr. Pearce has failed to allege that Chief Williams was personally involved in the alleged constitutional violations.  First, the only allegations in the

Amended Complaint regarding Chief Williams appear to relate to Mr. Pearce's First Amendment claim. *See* ECF No. 19 at 1 (alleging that Mr. Pearce spoke to Chief Williams about his officers' lack of performance, after which Mr. Pearce informed Chief Williams that he would be recording the officers' activities). Mr. Pearce, however, has not alleged that Chief Williams personally prevented him from recording police activity, that Chief Williams had a policy or custom of interfering with such activity, or that Chief Williams knew his officers were interfering with Mr. Pearce's recording activity and allowed it to happen. *See Rode*, 845 F.2d at 1207 (explaining that personal involvement can be shown through particularized allegations of "actual knowledge and acquiescence" in the alleged violation). Accordingly, Mr. Pearce has failed to state a claim against Chief Williams for First Amendment interference.

Mr. Pearce's only other reference to Chief Williams is his allegation that Chief Williams "is the Officer's immediate supervisor." ECF No. 19 at 2. But merely alleging that an individual is liable because he is a supervisor is insufficient. *Vo v. Wetzel*, No. 1:19-CV-00084-RAL, 2021 WL 6197743, at *8 (W.D. Pa. Dec. 31, 2021) (Lanzillo, M.J.), *aff'd*, No. 22-1210, 2022 WL 1467978 (3d Cir. May 10, 2022) ("Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient."). Mr. Pearce has not alleged how Chief Williams was personally involved in his arrest, detention, or prosecution. And he has not alleged that Chief Williams was involved in any other conduct that violated Mr. Pearce's rights. Therefore, Mr. Pearce has failed to allege Chief Williams' personal involvement and will dismiss him as a Defendant. The Court will, however, grant Mr. Pearce leave to amend so as to add additional allegations sufficient to show Chief Williams' personal involvement. *See Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (explaining that courts should permit a curative amendment in the civil rights context unless such an amendment would be inequitable or futile).

### B.    Mr. Pearce Has Failed to State a Claim for First Amendment Interference.

In his Amended Complaint, Mr. Pearce asserts that Defendants violated his First Amendment right to record the police. ECF No. 19 at 2. Defendants seek to dismiss this claim, arguing that he was not engaged in a protected activity because the right to record police is restricted in certain situations. ECF No. 23 at 7–8. Mr. Pearce responds that he advised Chief Williams of his intent to record the police, and that Chief Williams "had a duty to inform his subordinates of this fact." ECF No. 30 at 1. According to the Third Circuit, "under the First Amendment's right of access to information, the public has the commensurate right to record—photograph, film, or audio record—police officers conducting official police activity in public areas." *Fields v. City of Phila.*, 862 F.3d 353, 360 (3d Cir. 2017). But not "all recording is protected or desirable," and "the right to record is subject to reasonable restrictions on time, manner, and place." *Credico v. Krenitsky*, 845 F. App'x 196, 198 (3d Cir. 2021).

Here, Mr. Pearce provides very little detail regarding his recording of police activity. *See generally* ECF No. 19. While he alleges that he informed Chief Williams that he would be "legally photographing the police in the performance of their duties," he does not state whether he actually recorded the officers, when or where this occurred, or how it was interrupted and by whom. *Id.* at 1. Instead, he merely alleges that the "arrest and parole of the Plaintiff also forbid the Plaintiff from observing the police." *Id.* at 2. Such bare allegations are insufficient to establish a violation of the First Amendment right to record police. *See Aguilar v. Moyer*, No. 3:21-CV-595, 2021 WL 5804619, at *6 (M.D. Pa. Dec. 7, 2021) (identifying when and where plaintiff began recording police activity, who interfered with the recording, and how the individual interfered); *Morales v. Maxwell*, 600 F. Supp. 3d 497, 512 (D.N.J. 2022) (discussing plaintiff's proper recording of police activity where he was filming an arrest in a public area); *Booker v. Borough of North Braddock*,

8

No. 2:19-cv-1649, 2021 WL 37618, at *6 (W.D. Pa. Jan. 5, 2021) (Wiegand, J.) (finding plaintiff sufficiently pled that she properly recorded police where she did not interfere with the traffic stop or any police activity, followed police orders to move her vehicle, remained in her vehicle, and was legally parked during the entire encounter). Therefore, because Mr. Pearce has failed to allege an instance in which he recorded police activity and explain how it was interrupted, he has failed to state a claim for the violation of his First Amendment right to record police.[5] Accordingly, the Court will dismiss this claim, but it will, however, permit Mr. Pearce leave to amend. *Mullin*, 875 F.3d at 151.

### C.    Mr. Pearce Has Failed to State a Claim for Fourth Amendment Violations.

Liberally construing Mr. Pearce's Amended Complaint, it appears that he is bringing claims for false arrest, false imprisonment, and malicious prosecution under the Fourth Amendment. ECF No. 19. Defendants seek to dismiss these claims, arguing that Mr. Pearce's arrest, detention, and prosecution were proper because there was probable cause to arrest Mr. Pearce. ECF No. 23 at 9–10, 14. Mr. Pearce responds that he "has made statements that the Defendants arrested [him] without probable cause. . . based on False SWEARING made by the Defendants." ECF No. 30 at 1. The Court will address each claim below.

---

[5] Defendants' Motion interprets the Amended Complaint as potentially asserting a First Amendment retaliation claim. ECF No. 23 at 8–9. Construing the Amended Complaint liberally, the Court does not perceive such a claim, but even if one were asserted, it cannot survive Defendants' Motion. To state a First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected conduct, (2) the defendant "engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising [his] constitutional rights, and (3) a causal link existed between the protected activity and the retaliatory action." *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024) (cleaned up). Here, as explained, Mr. Pearce has failed to allege an instance in which he actually recorded police activity. Thus, he cannot show that he engaged in protected conduct. Further, while he alleges that his "arrest and parole" "forbid [him] from observing the police," he does not claim that he was arrested *because* he was recording police. ECF No. 19. Therefore, Mr. Pearce also has not alleged a causal link between his protected activity and the retaliatory action.

1. **False Arrest and False Imprisonment**

To state a claim for false arrest, a plaintiff must allege that "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020). And to state a claim for false imprisonment, a plaintiff must allege that "(1) that he was detained; and (2) that the detention was unlawful." *Pinkney v. Meadville, PA*, 648 F. Supp. 3d 615, 633 (W.D. Pa. 2023) (Lanzillo, M.J.), *aff'd*, 95 F.4th 743 (3d Cir. 2024) (citing *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)). While Defendants acknowledge that Mr. Pearce was arrested and detained, ECF No. 23 at 9, they assert that probable cause existed for his arrest and that, therefore, his detention was lawful.

False arrest and false imprisonment claims "will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee." *Harvard*, 973 F.3d at 199. "Probable cause exists if there is a fair probability that the person committed the crime at issue." *Id.* To determine if probable cause existed when, as here, plaintiff was arrested pursuant to a warrant, he must allege "(1) that the officer, with at least reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant, and (2) that those assertions or omissions were material, or necessary, to the finding of probable cause." *Giddens v. Stewart*, No. 20-cv-01474, 2021 WL 3100188, at *4 (E.D. Pa. July 22, 2021) (cleaned up) (citing *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017)).

Here, Mr. Pearce has alleged that two of the statements in Officer Wagner's affidavit were false. Specifically, he identifies Officer Wagner's assertions that "the dumpster was next to the handicap spot and that the Ford Escort was not on Highland at all" as false and contradicted by Officer Wagner's testimony at a preliminary hearing. ECF No. 19 at 2. Mr. Pearce, however, has not alleged that these assertions were made with "at least reckless disregard for the truth." Instead,

he merely alleges that Officer Wagner's later testimony contradicted his prior statements in the affidavit—but he does not indicate whether, or how, Officer Wagner knew these statements were false at the time he made them or how he recklessly disregarded their truth. *See Pinkney*, 95 F.4th at 748 (finding officer recklessly disregarded the truth when he asked leading questions that increased the risk of a false identification, overlooked a discrepancy in a witness's identification, and omitted three key facts from the affidavit that "any reasonable person would have known . . . was the kind of thing the judge would wish to know.").

Furthermore, Mr. Pearce has also failed to allege that these false statements were material to the issuance of the warrant. He identifies two other statements in the affidavit which served as the basis for two of the charges against him, but he does not challenge their truthfulness. ECF No. 19 at 2 (alleging that Officer Wagner stated in his affidavit that "Plaintiff admitted to calling in complaints when the Plaintiff knew the officers were on priority calls" and that "Plaintiff was causing a scene by yelling [obscenities]," which served as the bases for his harassment and disorderly conduct charges). Indeed, Mr. Pearce does not allege that these statements were false or that they were insufficient to establish probable cause on their own. Accordingly, because he has not alleged that probable cause was absent for all of the crimes charged against him, his "[f]alse arrest and false imprisonment claims [] necessarily fail." *Harvard*, 973 F.3d at 199.

Therefore, the Court finds that Mr. Pearce has failed to state a claim for false arrest and false imprisonment, and it will dismiss these claims. But because Mr. Pearce may be able to allege sufficient facts to state a plausible claim, the dismissal will be without prejudice and with leave to amend. *Mullin*, 875 F.3d at 151.

### 2.  Malicious Prosecution

To state a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant initiated a criminal proceeding; (2) without probable cause; (3) for a malicious purpose or a purpose other than bringing the plaintiff to justice; and (4) the proceeding ended in plaintiff's favor; (5) causing him to suffer "a deprivation of liberty consistent with the concept of seizure." *Shelley v. Wilson*, 152 F. App'x 126, 128 (3d Cir. 2005). Here, Mr. Pearce has failed to state a malicious prosecution claim. His Amended Complaint alleges very little regarding a trial or his conviction. Indeed, it merely asserts that Officer Wagner "knowingly and Willfuly [sic] committed FALSE SWEARING and PERJURY to arrest and convict [Mr. Pearce]." ECF No. 19 at 3. The Amended Complaint, however, does not include factual allegations about which of the charged offenses Defendants pursued against Mr. Pearce, why they prosecuted him for those offenses, and whether it was for an improper or malicious purpose. *See generally* ECF No. 19; *Tucker*, 2024 WL 4434965, at *2 (explaining that plaintiff failed to state a malicious prosecution claim where he did not allege that Defendants prosecuted him with a malicious purpose). Therefore, Mr. Pearce's bare bone allegations that Defendants lied under oath to convict him are insufficient to state a claim. *Chetty Holdings Inc. v. NorthMarq Capital, LLC*, 556 F. App'x 118, 121 (3d Cir. 2014) (explaining that conclusory or bare bones allegations without factual support are insufficient to survive a motion to dismiss). Accordingly, the Court will dismiss Mr. Pearce's malicious prosecution claims, but it will grant him leave to amend those claims. *Mullin*, 875 F.3d at 151.

### D.  Mr. Pearce Has Failed to State a *Monell* Claim.

While Mr. Pearce's Amended Complaint does not clearly allege a *Monell* claim, because he is suing the Forest Hills Police Department as well as other institutional entities, the Court will

broadly construe his Amended Complaint as alleging such a claim. "[A] municipality can be held liable [for constitutional violations] when the 'execution of a government's policy or custom. . . inflicts the injury.'" *Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978)). But "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Therefore, to state a *Monell* claim, a plaintiff must allege that his "harm was caused by a constitutional violation" and that "the municipality is responsible for that violation." *Bhatnagar*, 2023 WL 5378834, at *3. A plaintiff may allege that the municipality is responsible because it implemented an unconstitutional policy, custom, or practice or because it failed to train or supervise its employees. *See Est. of Kamal by & through Kamal v. Twp. of Irvington*, 790 F. App'x 395, 398 (3d Cir. 2019). Here, Mr. Pearce has failed to state a *Monell* claim because, as explained above, he has failed to allege an underlying constitutional violation. *Bhatnagar*, 2023 WL 5378834, at *3 (explaining that *Monell* claims are based on an underlying constitutional violation, and where plaintiff has no such claims remaining before the court, the *Monell* claims must also fail). Accordingly, the Court will dismiss any such *Monell* claim and dismiss Forest Hills Police Department as a Defendant. It will, however, grant Mr. Pearce leave to amend. *Mullin*, 875 F.3d at 151.

E.  **The Court will Dismiss Mr. Pearce's Remaining Claims.**

Liberally construing Mr. Pearce's Amended Complaint, he also appears to bring claims regarding Officer Wagner's "false swearing" and "felonious perjury." Mr. Pearce does not, however, indicate under what legal provision he is bringing these claims or in what context they occurred. To the extent Mr. Pearce is attempting to allege constitutional violations pursuant to § 1983 for false statements Officer Wagner made during Mr. Pearce's pre-trial and trial

proceedings, such a claim fails. "A trial witness, including a police officer, sued under § 1983 has absolute immunity with respect to any claim based on the witness's testimony." *Leith v. Middlesex & Somerset Cnty. Prosecutor's*, No. 15-7227, 2016 WL 3647995, at *9 (D.N.J. July 8, 2016) (citing *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983)). Furthermore, to the extent Mr. Pearce is attempting to bring false testimony claims under a state law, he has failed to state such claims. He has not identified under which legal provision he is bringing these claims or the facts and circumstances surrounding the false testimony. *Dennis v. Evans*, Civil Action No. 1:09-0656, 2011 WL 900911, at *6 (M.D. Pa. Feb. 2, 2011) (explaining that conclusory or bare-bones allegations are insufficient; instead, a plaintiff must "provide the grounds of his entitlement to relief" with "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Accordingly, the Court will dismiss any state-law false testimony claim without prejudice and with leave to amend, but it will dismiss any § 1983 false testimony claim with prejudice as amendment would be futile.

**IV.   Conclusion**

For the forgoing reasons, the Court will GRANT Defendants' Motion to Dismiss, ECF No. 22, such that Mr. Pearce's First Amendment claims, Fourth Amendment claims, *Monell* claims, and any state-law false testimony claims are DISMISSED WITHOUT PREJUDICE, and any § 1983 false-testimony claim is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendants Chief Williams and the Forest Hills Police Department are DISMISSED WITHOUT PREJUDICE.

Furthermore, Defendants the Borough of Forest Hills, the Borough of Chalfant, Forest Hills Mayor Frank Porco, and Chalfont Mayor James Perry are DISMISSED WITH PREJUDICE.

Finally, Mr. Pearce is granted leave to file a second amended complaint to correct the deficiencies identified in this Opinion. Any such second amended complaint shall be filed on or before May 19, 2025. If no second amended complaint is filed by that date, the dismissals without prejudice will be converted to ones with prejudice without further action by the Court. The second amended complaint must not include any new claims, and must be limited to the claims for which the Court permitted leave to amend and all allegations supporting those claims.[6]

DATED this 28th day of April, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):
All Counsel of Record

cc (via US mail):
Michael Pearce
Pro Se
201 Wilkins Avenue
Pittsburgh, PA 15112

---

[6] In his responses to Defendants' Motion to Dismiss, Mr. Pearce sought leave to file a second amended complaint because he had inadvertently omitted from his Amended Complaint the type of relief he was seeking. ECF Nos. 30, 33. Because the Court is dismissing Mr. Pearce's Amended Complaint and granting him leave to amend, Mr. Pearce may file a second amended complaint that includes all of the relief he is seeking.