IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL PEARCE,<br><br>    Plaintiff,<br><br>    v.<br><br>FOREST HILLS POLICE DEPARTMENT,<br>POLICE CHIEF CHARLES WILLIAMS,<br>DAKOTA WAGNER,<br><br>    Defendants. | 2:24-CV-01271-CCW |

## **OPINION**

Before the Court is a Motion to Dismiss filed by Defendants. ECF No. 41. For the reasons set forth below, the Court will grant Defendants' Motion and dismiss Plaintiff Michael Pearce's Second Amended Complaint.

### I.    Factual Background

This case arises from interactions between *pro se* Plaintiff Michael Pearce and Defendants Forest Hills Police Department, Police Chief Charles Williams, and Officer Dakota Wagner. The relevant factual allegations, taken as true, are as follows.

On July 1, 2024, Mr. Pearce made two separate 911 calls. ECF No. 39 at 1. The first call was to report that a dumpster was blocking a designated handicap parking space, and the second was to report a Ford Escort that was parked on the sidewalk of Highland Avenue. *Id.* When no police officers responded, Mr. Pearce again called 911. *Id.* The 911 dispatcher informed Mr. Pearce that officers from the Forest Hills Police Department had already responded to both calls. *Id.* A few minutes later, Mr. Pearce observed a Forest Hills patrol vehicle arrive. *Id.*

Mr. Pearce then went to the police station to speak with a supervisor about why dispatch told him that officers had already responded to his call when, in fact, they had not. *Id.* While at the station, Mr. Pearce spoke with Officer Wagner and a second officer. *Id.* The second officer explained that the officers were busy on another call when Mr. Pearce initially contacted 911. *Id.* Mr. Pearce, however, responded that he called 911 after the officers had left the scene of the other call. *Id.* at 2. The following day, Mr. Pearce spoke with Chief Williams about the officers' response to his 911 calls, and informed Chief Williams that he would be "observing, documenting, and photographing the police to insure they are performing accordingly." *Id.* Mr. Pearce stated that he then began "photographing SEVERAL police vehicles when he sees [sic] them 'loafing'" as well as "documenting the police response times and actions to complaints." *Id.*

On July 5, 2024, when Mr. Pearce was leaving a Dunkin Donuts, he drove past a marked Forest Hills patrol vehicle that was parked by the exit. *Id.* On July 10, 2024, Mr. Pearce was driving toward the Chalfant borough council meeting "to report to council his findings of police inaction and inefficientcy [sic]." *Id.* He alleges that one block from the borough community center, he and his son "were physically removed from their vehicle and arrested." *Id.* He contends that "Forest Hills Police and Officer Dakota Wagner" filed an arrest warrant, charging Plaintiff with stalking, harassment, conspiracy to commit stalking, 911 abuse, false reports to law enforcement, and disorderly conduct. *Id.* at 2–3. Officer Wagner's sworn arrest warrant affidavit stated that Mr. Pearce's two 911 calls on July 1 were false reporting. *Id.* at 3. It further stated that the dumpster was next to—and not blocking—the handicap spot, and that the Ford Escort was not parked on Highland Avenue. *Id.* It also explained that Mr. Pearce was being charged with harassment because he called 911 while knowing that the officers were on priority calls, and that Mr. Pearce was charged with disorderly conduct for causing a scene and saying "Fucking Pigs"

and "Suck our dicks." *Id.* Mr. Pearce then alleges that during a preliminary hearing, Officer Wagner testified that the dumpster was, in fact, blocking the handicap spot and that the Ford Escape was parked on Highland Avenue. *Id.* Both statements contradicted those in his arrest affidavit. *Id.* Mr. Pearce was subsequently found guilty of harassment and disorderly conduct in the Court of Common Pleas of Allegheny County. ECF No. 30, Ex. 2. Mr. Pearce's convictions, however, were overturned on appeal. *Id.*

On August 6, 2024, Mr. Pearce filed a complaint in the Court of Common Pleas of Allegheny County against Defendants. ECF No. 1, Ex. 2. On September 6, 2024, Defendants removed the action to federal court.[1] ECF No. 1. Mr. Pearce then filed an Amended Complaint against Defendants. ECF No. 19. On November 25, 2024, Defendants moved to dismiss Mr. Pearce's Amended Complaint for failure to state a claim. ECF No. 22. In response, Mr. Pearce filed two documents which opposed the Motion to Dismiss and requested leave to amend his Amended Complaint to add the type of relief he sought. ECF Nos. 30, 33. On April 28, 2025, the Court ruled on the Motion, dismissing Mr. Pearce's First Amendment, Fourth Amendment, *Monell*, and state-law false testimony claims without prejudice, and dismissing Mr. Pearce's § 1983 false-testimony claim with prejudice. ECF No. 38. On May 16, 2025, Mr. Pearce filed a Second Amended Complaint. ECF No. 39. Defendants moved to dismiss Mr. Pearce's Second Amended Complaint for failure to state a claim. ECF No. 41. In response, Mr. Pearce filed two documents which opposed the Motion to Dismiss. ECF Nos. 44, 45.[2] The Motion is now fully briefed and ripe for resolution. ECF Nos. 39, 41, 42, 44, 45.

---

[1] Defendants' removal was proper pursuant to 28 U.S.C. §§ 1331 and 1441(a) because Mr. Pearce's original complaint raised federal questions.

[2] To the extent that Mr. Pearce raises new allegations in his Opposition to Defendants' Second Motion to Dismiss that were not pleaded in the Second Amended Complaint, it is not proper for the Court to consider them here. *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 n.5 (3d Cir. 2018) (declining to consider allegations raised at the

## II. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

---

motion to dismiss stage that were not raised in the complaint); *see also Washington v. Delisma*, No. 3:19-cv-00196, 2021 WL 12343192, at *10 n.13 (W.D. Pa. 2021) (Lenihan, M.J.) ("any claims that a plaintiff has not raised in the complaint, but attempts to raise in opposition to a motion to dismiss, should not be considered by the Court."). Nonetheless, even if the Court were to consider allegations raised in the first instance in Mr. Pearce's briefing in opposition, the Court's ruling would not change.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss"). And when resolving a *pro se* plaintiff's motion, courts "liberally construe *pro se* filings with an eye toward their substance rather than their form." *See United States v. Delgado*, 363 F. App'x 853, 855 (3d Cir. 2010).

**III.     Legal Analysis**

In his Second Amended Complaint, Mr. Pearce contends that Officer Wagner violated his First and Fourth Amendment rights by "False swearing" on an arrest affidavit and committing "Felonious PERJURY" through testimony under oath "to violate the Plaintiff's 4th amendment and stop the Plaintiff from exercising his 1st amendment protected action." ECF No. 39 at 4–5. Mr. Pearce cites 18 Pa. Cons. Stat. §§ 4902 and 4903(a)(1)–(2) as authority for his claims. *Id.* Mr. Pearce provides no specific basis for including the Forest Hills Police Department as a defendant. With respect to Police Chief Charles Williams, Mr. Pearce states that Defendant Williams "was informed on 07/02/2024, that the Plaintiff will be exercising his 1st amendment protected action of photographing the police. But then have [sic] the Plaintiff arrested for actions on 07/05/2024." *Id.* at 5. The Court liberally construes Mr. Pearce's Second Amended Complaint as bringing claims pursuant to 42 U.S.C. § 1983 for violation of Mr. Pearce's First Amendment right to record

police activity and his Fourth Amendment right to be free from false arrest, false imprisonment, and malicious prosecution.³ *See generally* ECF No. 39.

Section 1983 establishes a statutory cause of action to vindicate constitutional violations. 42 U.S.C. § 1983. To state a claim under § 1983, plaintiffs must plead that they were "deprived of a federal constitutional or statutory right by a state actor." *Coulter v. Coulter*, No. 23-2222, 2024 WL 163081, at *1 (3d Cir. Jan. 16, 2024); *see Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983). Thus, courts consider whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Further, courts must also address the state actor element, which requires an individual to "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey*, 635 F.3d at 609 (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)). The Court will address each of Mr. Pearce's § 1983 claims below.

### A. Mr. Pearce Has Failed to Sufficiently Allege Chief Williams' Personal Involvement.

Defendants again seek to dismiss Chief Williams as a defendant, asserting that Mr. Pearce has failed to allege that Chief Williams was personally involved in the alleged constitutional violations. ECF No. 42 at 8–11. Mr. Pearce contends that he informed Chief Williams that he would be "exercising [his] 1st amendment protected action by observing, documenting, and

---

³ The Court has jurisdiction over Mr. Pearce's constitutional claims, which raise federal questions, under 28 U.S.C. § 1331 and supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367.

photographing the police to insure they are performing accordingly[,]" and that Chief Williams later "have [sic] the Plaintiff arrested for actions on 07/05/2024." ECF 39 at 2, 5.

"Section 1983 liability cannot be based solely upon the basis of *respondeat superior*." *Gagliardi v. Fisher*, 513 F. Supp. 2d 457, 473 (W.D. Pa. 2007) (Conti, J.) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Rather, an individual defendant in a § 1983 case "must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (internal quotations omitted). Additionally, a supervisor's conduct may be actionable where they "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quotation omitted); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[A § 1983] complaint is adequate where it states the conduct, time, place, and persons responsible.").

Here, the Court agrees that Mr. Pearce has failed to sufficiently allege that Chief Williams was personally involved in the alleged constitutional violations. In Mr. Pearce's Second Amended Complaint, he again contends that Chief Williams violated his First Amendment right to record police. *See* ECF No. 39 at 2 (alleging that Mr. Pearce spoke to Chief Williams about his officers' lack of performance, after which Mr. Pearce informed Chief Williams that he would be recording the officers' activities). Mr. Pearce, however, has not alleged that Chief Williams personally prevented him from recording police activity, that Chief Williams had a policy or custom of interfering with such activity, or that Chief Williams knew his officers were interfering with Mr. Pearce's recording activity and allowed it to happen. *See Rode*, 845 F.2d at 1207 (explaining that

7

personal involvement can be shown through particularized allegations of "actual knowledge and acquiescence" in the alleged violation). Accordingly, Mr. Pearce has again failed to state a claim against Chief Williams for First Amendment interference.

Construing the Second Amended Complaint broadly, Mr. Pearce also implicates Chief Williams in connection with his claims under the Fourth Amendment. However, Mr. Pearce offers only a vague and conclusory statement alleging Chief Williams' involvement in his arrest. *See* ECF No. 39 at 5 (alleging that Chief Williams "have [sic] the Plaintiff arrested for actions on 07/05/2024."). Beyond that, Mr. Pearce has not specifically alleged how Chief Williams was personally involved in his arrest, detention, or prosecution. Indeed, according to the Second Amended Complaint, the arrest warrant affidavit was prepared by Officer Wagner, not Chief Williams. *Id.* at 2–3. Furthermore, Mr. Pearce has not alleged that Chief Williams was involved in any other conduct that violated Mr. Pearce's rights. Therefore, Mr. Pearce has failed to sufficiently allege Chief Williams' personal involvement and the Court will dismiss him as a Defendant. The dismissal will be with prejudice given Mr. Pearce's failure to cure deficiencies in his claims against Chief Williams that were previously identified by the Court. *See Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (explaining that courts need not permit a curative amendment in the civil rights context where such an amendment would be inequitable or futile).

### B. Mr. Pearce Has Failed to State a Claim for First Amendment Interference.

In his Second Amended Complaint, Mr. Pearce asserts that Defendants violated his First Amendment right to record the police. ECF No. 39 at 4–5. Defendants seek to dismiss this claim, arguing that he was not engaged in a protected activity because the right to record police is restricted in certain situations. ECF No. 42 at 5–6. Mr. Pearce responds that while the Defendants "did not immediately interfere" with his ability to record police, they "took steps to retaliate and

stop his continued 1st Amendment activity." ECF No. 44 at 1. According to the Third Circuit, "under the First Amendment's right of access to information, the public has the commensurate right to record—photograph, film, or audio record—police officers conducting official police activity in public areas." *Fields v. City of Phila.*, 862 F.3d 353, 360 (3d Cir. 2017). But not "all recording is protected or desirable," and "the right to record is subject to reasonable restrictions on time, manner, and place." *Credico v. Krenitsky*, 845 F. App'x 196, 198 (3d Cir. 2021).

Here, Mr. Pearce describes his recording of police activity as "photographing SEVERAL police vehicles when [Mr. Pearce] sees them 'loafing' and . . . documenting the police response times and actions to complaints. . . . at a distance and with a camera with a large 800mm lense [sic]." ECF No. 39 at 2. Mr. Pearce does not allege that this activity was interrupted. *Id.* Instead, he alleges that "his bail condition disallowed him to continue to exercise his 1st amendment protected action of photographing the police." *Id.* at 5. As in Mr. Pearce's First Amended Complaint, such bare allegations are insufficient to establish a violation of the First Amendment right to record police. *See Aguilar v. Moyer*, No. 3:21-CV-595, 2021 WL 5804619, at *6 (M.D. Pa. Dec. 7, 2021) (identifying when and where plaintiff began recording police activity, who interfered with the recording, and how the individual interfered); *Morales v. Maxwell*, 600 F. Supp. 3d 497, 512 (D.N.J. 2022) (discussing plaintiff's proper recording of police activity where he was filming an arrest in a public area); *Booker v. Borough of North Braddock*, No. 2:19-cv-1649, 2021 WL 37618, at *6 (W.D. Pa. Jan. 5, 2021) (Wiegand, J.) (finding plaintiff sufficiently pled that she properly recorded police where she did not interfere with the traffic stop or any police activity, followed police orders to move her vehicle, remained in her vehicle, and was legally parked during the entire encounter). Therefore, because Mr. Pearce has failed to allege an instance in which he recorded police activity and explain how it was interrupted, he has again failed to state

a claim for the violation of his First Amendment right to record police. Accordingly, the Court will dismiss this claim with prejudice. *Mullin*, 875 F.3d at 151.

        **C.**        **Mr. Pearce Has Failed to State a Claim for Fourth Amendment Violations.**

Liberally construing Mr. Pearce's Second Amended Complaint, it appears that he is bringing claims for false arrest, false imprisonment, and malicious prosecution under the Fourth Amendment. ECF No. 39. Defendants seek to dismiss these claims, arguing that Mr. Pearce's arrest, detention, and prosecution were proper because there was probable cause to arrest Mr. Pearce. ECF No. 42 at 7–8, 12–13. Mr. Pearce contends that "[t]he Defense violated the plaintiff's . . . 4th amendment by false swearing to get the plaintiff incarcerated." ECF No. 39 at 5. The Court will address each claim below.

        **1.**        **False Arrest and False Imprisonment**

To state a claim for false arrest, a plaintiff must allege that "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020). And to state a claim for false imprisonment, a plaintiff must allege that "(1) that he was detained; and (2) that the detention was unlawful." *Pinkney v. Meadville*, 648 F. Supp. 3d 615, 633 (W.D. Pa. 2023) (Lanzillo, M.J.), *aff'd*, 95 F.4th 743 (3d Cir. 2024) (citing *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)). While Defendants acknowledge that Mr. Pearce was arrested and detained, ECF No. 42 at 8, they assert that probable cause existed for his arrest and that, therefore, his detention was lawful.

False arrest and false imprisonment claims "will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee." *Harvard*, 973 F.3d at 199. "Probable cause exists if there is a fair probability that the person committed the crime at issue." *Id.* To determine if probable cause existed when, as here, plaintiff was arrested pursuant to a warrant, he

must allege "(1) that the officer, with at least reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant, and (2) that those assertions or omissions were material, or necessary, to the finding of probable cause." *Giddens v. Stewart*, No. 20-cv-01474, 2021 WL 3100188, at *4 (E.D. Pa. July 22, 2021) (cleaned up) (citing *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017)).

Here, Mr. Pearce alleges that several statements in Officer Wagner's affidavit were false. Specifically, he identifies Officer Wagner's assertions that "the Dumpster was next to the handicapped parking space and the white Ford escort was not on Highland at all" as false and contradicted by Officer Wagner's testimony at a preliminary hearing. ECF No. 39 at 3. As in his First Amended Complaint, Mr. Pearce, however, has not alleged that these assertions were made with "at least reckless disregard for the truth." Instead, he again merely alleges that Officer Wagner's later testimony contradicted his prior statements in the affidavit—but he does not indicate whether, or how, Officer Wagner knew these statements were false at the time he made them or how he recklessly disregarded their truth. *See Pinkney*, 95 F.4th at 748 (finding officer recklessly disregarded the truth when he asked leading questions that increased the risk of a false identification, overlooked a discrepancy in a witness's identification, and omitted three key facts from the affidavit that "any reasonable person would have known . . . was the kind of thing the judge would wish to know.").

Furthermore, Mr. Pearce has again failed to sufficiently allege that false statements were material to the issuance of the warrant. Mr. Pearce challenges the truthfulness of two additional statements in Officer Wagner's affidavit that Mr. Pearce alleges served as the basis for two of the charges against him. ECF No. 39 at 3 (alleging that Officer Wagner falsely stated in his affidavit that "Plaintiff admitted to calling for ordinance complaints when he knew the officers were on

11

important calls" and that "Plaintiff made a scene by saying [obscenities]" and these statements served as the bases for his harassment and disorderly conduct charges). However, Mr. Pearce has failed to allege that any false statements made by Officer Wagner were necessary for a finding of probable cause. Accordingly, because he has not alleged that probable cause was absent for all of the crimes charged against him, his "[f]alse arrest and false imprisonment claims [] necessarily fail." *Harvard*, 973 F.3d at 199. Therefore, the Court finds that Mr. Pearce has failed to cure defects in his claims for false arrest and false imprisonment, and it will dismiss these claims with prejudice. *Mullin*, 875 F.3d at 151.

### 2. Malicious Prosecution

To state a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant initiated a criminal proceeding; (2) without probable cause; (3) for a malicious purpose or a purpose other than bringing the plaintiff to justice; and (4) the proceeding ended in plaintiff's favor; (5) causing him to suffer "a deprivation of liberty consistent with the concept of seizure." *Shelley v. Wilson*, 152 F. App'x 126, 128 (3d Cir. 2005). Here, Mr. Pearce has failed to cure defects in his malicious prosecution claim. His Second Amended Complaint again alleges very little regarding a trial or his conviction. Indeed, it merely asserts that he "was found guilty of Summary Harassment and Disorderly Conduct" and that the "2 Summary charges were due to the 'False' oral testimony under oath by the Defendant." ECF No. 39 at 4. While the Second Amended Complaint specifies which charged offenses Defendants pursued against Mr. Pearce, it fails to include factual allegations about why they prosecuted him for those offenses, and whether it was for an improper or malicious purpose. *See generally* ECF No. 39; *Tucker v. Sedlak*, No. 2:24-CV-00303-CCW, 2024 WL 4434965, at *5 (W.D. Pa. Oct. 7, 2024) (Wiegand, J.) (explaining that plaintiff failed to state a malicious prosecution claim where he did not allege that

Defendants prosecuted him with a malicious purpose). Therefore, Mr. Pearce's bare bone allegations that Defendants lied under oath to convict him are insufficient to state a claim. *Chetty Holdings Inc. v. NorthMarq Capital, LLC*, 556 F. App'x 118, 121 (3d Cir. 2014) (explaining that conclusory or bare bones allegations without factual support are insufficient to survive a motion to dismiss). Accordingly, the Court will dismiss Mr. Pearce's malicious prosecution claims with prejudice. *Mullin*, 875 F.3d at 151.

### D. Mr. Pearce Has Failed to State a *Monell* Claim.

While Mr. Pearce's Second Amended Complaint makes only passing reference to a *Monell* claim, because he is suing the Forest Hills Police Department, the Court will broadly construe his Amended Complaint as alleging such a claim. "[A] municipality can be held liable [for constitutional violations] when the 'execution of a government's policy or custom. . . inflicts the injury.'" *Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978)). But "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Therefore, to state a *Monell* claim, a plaintiff must allege that his "harm was caused by a constitutional violation" and that "the municipality is responsible for that violation." *Bhatnagar*, 2023 WL 5378834, at *3. A plaintiff may allege that the municipality is responsible because it implemented an unconstitutional policy, custom, or practice or because it failed to train or supervise its employees. *See Est. of Kamal by & through Kamal v. Twp. of Irvington*, 790 F. App'x 395, 398 (3d Cir. 2019). Here, Mr. Pearce has failed to state a *Monell* claim because, as explained above, he has failed to allege an underlying constitutional violation. *Bhatnagar*, 2023 WL 5378834, at *3 (explaining that *Monell* claims are based on an underlying constitutional violation, and where plaintiff has no such claims remaining before the court, the

*Monell* claims must also fail). Accordingly, the Court will dismiss any such *Monell* claim with prejudice and dismiss Forest Hills Police Department as a Defendant with prejudice. *Mullin*, 875 F.3d at 151.

### E. The Court will Dismiss Mr. Pearce's Remaining Claims.

Mr. Pearce also appears to bring claims regarding Officer Wagner's "false swearing" and "felonious perjury" under Pennsylvania state law, citing criminal statutes 18 Pa. Cons. Stat. §§ 4902 and 4903(a)(1)–(2). It is well settled that criminal statutes do not give rise to private causes of action absent express statutory language granting private enforcement. *Geiger v. Conroy*, No. CV 22-2458, 2022 WL 4585520, at *5 (E.D. Pa. Sept. 29, 2022) ("Criminal statutes . . . do not provide a basis for civil liability."); *In re Petery*, No. 5:25-CV-0116, 2025 WL 1202056, at *2 (E.D. Pa. Apr. 25, 2025) (citing *Brown v. City of Phila. Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018)). Neither 18 Pa. Cons. Stat. § 4902 nor §§ 4903(a)(1)–(2) contain any language authorizing a private right of action. *See Lee v. Comhar Inc.*, 244 F. App'x 464, 466 (3d Cir. 2007) (finding no private right of action under §§ 4902 or 4903). Therefore, claims purporting to arise under these statutes fail as a matter of law. Accordingly, the Court will dismiss state-law "false swearing" and "felonious perjury" claims with prejudice as amendment would be futile. *Mullin*, 875 F.3d at 151.

### IV. Conclusion

For the foregoing reasons, the Second Amended Complaint will be dismissed with prejudice.

DATED this 3rd day of October, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge


cc (via ECF email notification):
All Counsel of Record

cc (via US mail):
Michael Pearce
*Pro Se*
201 Wilkins Avenue
Pittsburgh, PA 15112